UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRIAN EICHMULLER,

Plaintiff,

v. Case No. 8:20-cv-47-T-33SPF

SARASOTA COUNTY GOVERNMENT,

Defendant.
______________________________/

**ORDER**

This matter comes before the Court upon consideration of Defendant Sarasota County Government's Motion for Summary Judgment (Doc. # 38), filed on November 13, 2020. Plaintiff Brian Eichmuller responded on November 27, 2020. (Doc. # 44). For the reasons that follow, the Motion is denied.

## I. Background

Eichmuller was hired by the County to work as a Skilled Trades Worker II in September 2018. (Doc. # 36 at Ex. 14). Eichmuller's job duties included "install[ing], replac[ing], and modify[ing] mechanical and electrical equipment located on and within Public Utilities facilities," and "perform[ing] lift station maintenance." (Doc. # 36 at Ex. 15). He worked in that position from September 17, 2018, to May 20, 2019. (Doc. # 36 at Ex. 14; Doc. # 36 at Ex. 19).

During the interview process, the County told Eichmuller that he would be required to obtain a Class A CDL license during his probationary period of employment, which is the first six months of employment. (Doc. # 35 at 33:23-37:2). The County sent Eichmuller a conditional letter of employment on September 7, 2018. (Doc. # 36 at Ex. 3). That letter stated: "Class A CDL required within six (6) months of hire. May be removed from the position if not obtained for not meeting the minimum qualifications of the position." (Id.). The County then sent Eichmuller another letter confirming his employment on September 13, 2018. (Doc. # 36 at Ex. 14). That letter reiterated the Class A CDL requirement:

> You also must obtain a CDL, Class A within six months from the date of your new assignment. You are unable to perform CDL duties until you obtain a CDL license and pass a CDL drug screen. If you are not successful, you may be separated from employment since you will not meet the minimum qualifications of the position.

(Id.). The confirmation letter noted that Eichmuller's six-month probation period would end on March 17, 2019. (Id.).

The process of obtaining a Class A CDL involves taking three written tests, at which point a Class A CDL permit is issued. (Doc. # 35 at 13:4-14:6). Subsequently, on a later date after the individual has had time to practice driving, the individual then takes a road test, which is administered

by the County's school board. (Id. at 37:6-40:1; Doc. # 36 at 49:17-50:8). If that road test is passed, then the final Class A CDL is issued. (Doc. # 35 at 37:6-40:1).

Once an employee passes the written exams and presents a copy of his CDL permit to his supervisor, it is the County's practice to have the County's water and wastewater operations manager, David Sell, issue a check for the cost of the road test and have the employee's supervisor then contact the school board to schedule the road test. (Id. at 36:6-19, 37:6-40:1; Doc. # 36 at 6:8-10, 49:17-50:8). Victor Carlano, Eichmuller's direct supervisor, testified that, after he would send the information to the school board requesting a road test, the school board would then notify him of the selected date for the road test. (Doc. # 37 at 38:18-25).

Eichmuller passed his written exams on January 22, 2019, and was issued a Class A CDL permit. (Doc. # 44-2 at 2). In February 2019, Eichmuller informed Carlano that he "was ready to take the road exam" and gave Carlano a copy of his Class A CDL permit. (Id.). A check for the cost of the road test was issued on March 7, 2019. (Doc. # 39 at Ex. 2).

It is unclear whether Carlano ever contacted the school board to schedule Eichmuller's road test. Sell testified that Carlano "contacted the place to schedule a test" but Sell did

not "know if a date was confirmed." (Doc. # 36 at 54:3-20). But Carlano had no memory of whether he had contacted the school board. (Doc. # 37 at 35:19-36:11). Although Carlano testified there would be emails and documentation if he had contacted the school board (Id. at 38:18-40:4, 43:24-44:16), the County has not presented such documentation. And, according to Eichmuller, he "was never advised by [] Carlano or anyone at the County that [his] Class A CDL road exam was scheduled." (Doc. # 44-2 at 2).

On February 27, 2019, Eichmuller "suffered injuries to [his] head, neck, knees, elbows and forearms when [he] fell from a ladder and struck [his] head on a pipe and [his] knees, elbows and forearms on the ground while performing [his] job duties for the County." (Doc. # 44-2 at 2). As required by the County and its workers' compensation administrator, John Eastern Company, Eichmuller went to an urgent care facility that day. (Id.). The urgent care provider "released [Eichmuller] to return to full duty work later the same day." (Id.).

Eichmuller "continued to perform [his] full job duties for the County without any assistance and/or accommodation from the date of [the] accident (February 27, 2019) through March 13, 2019." (Id.). But the assigned workers'

compensation medical provider diagnosed Eichmuller with a neck sprain on March 14, 2019, and held Eichmuller out from work. (Id.).

Eichmuller was released to return to work with a light duty restriction on March 28, 2019. (Id.). According to Eichmuller, he was advised by the County that he "was not eligible to return to [the] Skilled Trades Worker II position" because of his medical restrictions. (Id. at 3). Eichmuller avers that, despite the medical restrictions on lifting, he "was still physically able to perform the lifting/moving requirements" of his job, as well as all of the other duties of his job. (Id. at 2).

Additionally, the County told Eichmuller that there was no light duty work available. (Id. at 3). Indeed, Sell testified that the County did not have any light duty assignments available and, as a result, Eichmuller remained out on leave. (Doc. # 36 at 44:16-45:2). However, the workers' compensation provider, Johns Eastern, stated in a letter dated March 28, 2019, that the County "can accommodate light or sedentary duty" and "has work available." (Doc. # 42 at Ex. 14 at 2). And Kimberly Parsons, a benefits specialist with the County, testified that the County informs Johns

Eastern if it has light duty or sedentary work available for an employee. (Doc. # 42 at 49:10-51:2).

On March 7, 2019, Eichmuller had emailed various County employees, providing a description of his accident and expressing dissatisfaction with how his supervisor, Carlano, handled his accident and the workers' compensation process. (Doc. # 36 at Ex. 29 at 3). Later, while he was out on leave, Eichmuller complained to the County on April 30, 2019, about having to see the medical providers selected by the workers' compensation provider. (Doc. # 44-2 at 3). He asked the County for permission to be treated by his own primary care physician instead, but the County told him that he had to continue seeing the medical providers assigned by the workers' compensation company. (Id.).

Because he was out on workers' compensation leave, Eichmuller's probationary period — which was originally set to end on March 17, 2019 — was extended. (Doc. # 36 at 38:25-39:13; Doc. # 36 at Ex. 14). It is the County's policy that, when an employee goes out on leave, his probationary period is paused or tolled. (Doc. # 40 at 7:12-20, 13:15-14:12). As of May 20, 2019, Eichmuller was still on probation. (Doc. # 36 at 65:8-15; Doc. # 41 at 41:3-5).

On May 20, 2019, Eichmuller's employment was terminated. (Doc. # 36 at Ex. 19). The termination letter is titled "Notice of Unsuccessful Probationary Period" and states that the County "has elected to exercise its option to terminate your employment." (Id.). Sell testified that the sole reason Eichmuller was terminated was because he did not obtain a Class A CDL during the first six months of his employment. (Doc. # 36 at 33:17-34:3, 35:14-19).

It is undisputed that Eichmuller never obtained his Class A CDL license during his employment and never requested an extension of time to do so. (Doc. # 35 at 22:12-14, 45:13-17). Yet, at one point during his deposition, Sell agreed that the language of Eichmuller's employment letter meant that Eichmuller "needed to get a Class A CDL within his probationary period." (Doc. # 36 at 20:17-23). Similarly, Sherry Ball — a human resources business partner for the County — testified that it was her understanding that an employee in Eichmuller's position only had to obtain his CDL license by the time his probation had ended. (Doc. # 41-1 at 6:5-9, 29:24-30:2, 31:20-32:3). Nevertheless, Eichmuller was fired while still on probation. (Doc. # 36 at 65:8-15; Doc. # 41 at 41:3-5). At the time of his termination, Eichmuller's Class A CDL permit was still valid and it did not expire until

July 2019. (Doc. # 44-2 at 2). Carlano testified that Eichmuller would be able to perform his job duties with a Class A CDL permit. (Doc. # 35 at 14:7-9).

Additionally, based on a chart created by the County, it appears that multiple other Skilled Trade Workers were not fired for failing to obtain Class A CDL licenses within six months of their hire date. (Doc. # 44-6). And Sell admitted that Eichmuller is the only Skilled Trades Worker who was terminated for not having a Class A CDL license, let alone terminated for that while on probation. (Doc. # 36 at 44:5-14).

Eichmuller initiated this action against the County on January 7, 2020, asserting claims for disability discrimination under the Americans with Disabilities Act (ADA) and the Florida Civil Rights Act (FCRA) (Count I) and workers' compensation retaliation in violation of Florida Statute § 440.205 (Count II). (Doc. # 1). The County filed its answer on February 4, 2020. (Doc. # 10). The case then proceeded through discovery.

The County now moves for summary judgment on all claims. (Doc. # 38). Eichmuller has responded (Doc. # 44), and the Motion is ripe for review.

## II. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996)(citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the

pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995)(quoting Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). But, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981).

## III. Analysis

The County seeks summary judgment on all of Eichmuller's claims. (Doc. # 38). But the Court finds that genuine issues of material fact preclude summary judgment on any claim.

**A. Disability Discrimination Claims**

Eichmuller brought Count I for disability discrimination under both the ADA and the FCRA. "Given the parallel structure of the statutes, this Court analyzes state-law disability discrimination claims under the FCRA using the same framework as it does for claims made under the federal" ADA. D'Onofrio v. Costco Wholesale Corp., 964 F.3d 1014, 1021 (11th Cir. 2020).

In order to succeed on a discrimination claim, Eichmuller must show that: "(1) he is disabled; (2) he was a qualified individual at the relevant time . . . ; and (3) he was discriminated against [] because of his disability." Scott v. Shoe Show, Inc., 38 F. Supp. 3d 1343, 1359 (N.D. Ga. 2014)(citation omitted). A qualified individual is a person "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

The County concedes that Eichmuller qualifies as disabled and was fired. However, it argues that Eichmuller was not a "qualified individual" because he had not obtained his Class A CDL license. (Doc. # 38 at 9-10); see Aponte v. Brown & Brown of Fla., Inc., 806 F. App'x 824, 829-30 (11th Cir. 2020)(holding in the context of FMLA claims that the

plaintiff insurance sales associate was not qualified for his position because he never passed a required licensing exam during his employment and that his termination for failing to pass the exam was not pretextual).

The problem with this argument is that there is evidence Eichmuller was still on probation and on leave at the time he was fired. (Doc. # 36 at 65:8-15; Doc. # 41 at 41:3-5; Doc. # 44-2 at 2). The six-month deadline to obtain a Class A CDL was not a strict time limit, as the County admits it tolled Eichmuller's probationary period and time to obtain the CDL because Eichmuller went out on workers' compensation leave. See (Doc. # 38 at 7)(stating that the extension of Eichmuller's probationary period "toll[ed] the time for [Eichmuller] to obtain his Class A CDL"). Given the testimony of Sell and Ball (Doc. # 36 at 20:17-23; Doc. # 41-1 at 29:24-30:2, 31:20-32:3), a reasonable jury could conclude that Eichmuller was only required to obtain his Class A CDL by the end of his probationary period.

Yet, Eichmuller was still on probation and on leave when he was fired. (Doc. # 36 at 65:8-15; Doc. # 41 at 41:3-5; Doc. # 38 at 7). Thus, taking all reasonable inferences in Eichmuller's favor, the County had decided to toll the

deadline to obtain his Class A CDL while he was on probation, but then terminated him while he was still on probation.

Furthermore, Eichmuller's supervisor, Carlano, testified that Eichmuller would be able to perform all the essential functions of his job with his temporary Class A CDL permit. (Doc. # 35 at 14:7-9). And Eichmuller averred that, despite his medical restrictions on lifting, he was able to perform all the essential functions of his job without an accommodation. (Doc. # 44-2 at 2). Finally, Eichmuller has presented evidence that — taken in the light most favorable to him — suggests multiple non-disabled Skilled Trades Workers failed to obtain Class A CDL licenses within six months of being hired, yet were not fired (Doc. # 4-6), raising an inference of discrimination. All this creates a genuine dispute as to whether Eichmuller was qualified for his position at the time he was fired.

Next, while the County has presented Eichmuller's lack of a Class A CDL license as a non-discriminatory reason for his firing, there is a genuine dispute of material fact regarding pretext. "A legitimate nondiscriminatory reason proffered by the employer is not a pretext for prohibited conduct unless it is shown that the reason was false and that the real reason was impermissible retaliation or

discrimination." Worley v. City of Lilburn, 408 F. App'x 248, 251 (11th Cir. 2011)(citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993)). "If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot merely recast the reason, but must meet it 'head on and rebut it.'" Id. (quoting Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000)). Thus, to show pretext, an employee must demonstrate "such weaknesses, implausibilities, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." McCann v. Tillman, 526 F.3d 1370, 1375 (11th Cir. 2008)(quoting Cooper v. S. Co., 390 F.3d 695, 725 (11th Cir. 2004)).

Again, Eichmuller has presented evidence suggesting that multiple non-disabled Skilled Trades Workers failed to obtain Class A CDL licenses within six months of being hired, yet were not fired for this. (Doc. # 44-6). There is also testimony that no other Skilled Trades Worker was terminated for not obtaining a CDL, let alone while they were on probation. (Doc. # 36 at 44:5-14). Additionally, despite Eichmuller's reporting to Carlano that he was ready to take the road test and the issuance of a check by the County, there

is no documentary evidence that the County ever scheduled a road test for Eichmuller.

Viewing the evidence in the light most favorable to Eichmuller, a reasonable jury could conclude that the County never scheduled Eichmuller's road test. A reasonable jury could interpret the County's failure to schedule the road test — which it knew was a necessary step to Eichmuller obtaining his Class A CDL — as evidence that the County's firing of Eichmuller for not obtaining such license was pretextual. Finally, as mentioned before, a reasonable jury could determine that Eichmuller had additional time left in which to take the road test because he was still on probation when the County terminated him for failing to obtain his Class A CDL.

In short, genuine issues of material fact preclude the entry of summary judgment on behalf of the County. Accordingly, the Motion is denied as to Count I.

### B. **Workers' Compensation Retaliation Claim**

In Count II, Eichmuller asserts a claim for workers' compensation retaliation under Florida Statute § 440.205. (Doc. # 1 at 6). Section 440.205 provides that: "No employer shall discharge, threaten to discharge, intimidate, or coerce any employee by reason of such employee's valid claim for

compensation or attempt to claim compensation under the Workers' Compensation Law." Fla. Stat. § 440.205.

"A [Section] 440.205 claim has the same elements as employment retaliation claims under federal law: (1) the employee engaged in statutorily protected activity, (2) was subjected to an adverse employment action, and (3) there was a causal relationship between the protected activity and the adverse employment action." Juback v. Michaels Stores, Inc., 143 F. Supp. 3d 1195, 1203 (M.D. Fla. 2015). "Such claims are subject to the burden-shifting framework set out in McDonnell Douglas Corporation v. Green, 411 U.S. 792 [] (1973), under which the plaintiff must come forward with a prima facie case." Id. "The burden then shifts to the defendant to articulate a non-discriminatory reason for the adverse action, and if that burden is met, the plaintiff must demonstrate that the defendant's reason was pretextual." Id.

The County concedes that Eichmuller has established the first two elements of his prima facie case — protected activity and an adverse employment action. (Doc. # 38 at 15). But the County argues that Eichmuller cannot show causation based on the temporal proximity between his workers' compensation claim in late February 2019 and his termination on May 20, 2019. (Id. at 15-17); see Higdon v. Jackson, 393

F.3d 1211, 1221 (11th Cir. 2004)("By itself, the three month period between the September 29 letter and the December 31 incident does not allow a reasonable inference of a causal relation between the protected expression and the adverse action.").

The Court disagrees with the County. First, while temporal proximity of nearly three months between protected activity and an adverse employment action may not be enough on its own, Eichmuller has presented other evidence as to causation. There is a genuine dispute over whether there was light duty work available when Eichmuller was released to light duty. If there was light duty work available as Johns Eastern stated in a letter (Doc. # 42 at Ex. 14 at 2), then the County's denying the availability of such work and keeping Eichmuller out on leave could support an inference of retaliation. Furthermore, throughout the workers' compensation process, Eichmuller had made his dissatisfaction with the County and his supervisor's handling of his workers' compensation claim known. (Doc. # 44-2 at 3; Doc. # 36 at Ex. 29 at 3). Indeed, Eichmuller complained to the County on April 30, 2019 — about three weeks before he was terminated — about having to see the medical providers selected by the workers' compensation provider. (Doc. # 44-2 at 3). Taken together,

Eichmuller has raised a genuine issue as to causation and, thus, established a prima facie case. See Thomas v. CVS/Pharmacy, 336 F. App'x 913, 915 (11th Cir. 2009)("The causation element is to be construed broadly, so that the plaintiff need only prove that the protected activity and the adverse action are not completely unrelated.").

The County has presented a legitimate, non-retaliatory reason for Eichmuller's termination — his failure to obtain a Class A CDL license. But, for the same reasons related to the discrimination claims, Eichmuller has shown a genuine issue of material fact regarding pretext. That is, a reasonable jury could believe that the purported reason for Eichmuller's termination — his failure to obtain a Class A CDL — was false because he was still on probation at that time. A jury could also conclude that Eichmuller's making a workers' compensation claim (and being out on leave as a result) was the real reason for his termination.

For this reason, the Motion is denied as to Count II.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant Sarasota County Government's Motion for Summary Judgment (Doc. # 38) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 8th day of January, 2020.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE